**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION**

| | |
|---|---|
| INTERNATIONAL FOREST PRODUCTS, L.L.C., a Kansas limited liability company and INTERNATIONAL FOREST PRODUCTS DEL ECUADOR SA, <br><br> Plaintiffs, <br><br> v. <br><br> AAR MANUFACTURING, INC., an Illinois corporation, <br><br> SERVE AT: <br><br> UNITED AGENT GROUP INC <br> 350 S NORTHWEST HIGHWAY #300 <br> PARK RIDGE , IL 60068 <br><br> Defendant. | ) <br> ) Case No.:  22-2002 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiffs International Forest Products, L.L.C. and International Forest Products del Ecuador SA, by counsel, for its Complaint for Breach of Contract against Defendant AAR Manufacturing, Inc., states as follows:

### THE PARTIES

1.      Plaintiff International Forest Products, L.L.C. ("IFP") is a limited liability company organized under the laws of Kansas, whose members are Michael Kincaid, an individual and citizen of Kansas, and Stephen Wilde, an individual and citizen of Kansas.

2.      Plaintiff International Forest Products del Ecuador SA ("IFP Ecuador") is a corporation organized under the laws of Ecuador and is a wholly owned subsidiary of IFP.

3.      Defendant AAR Manufacturing, Inc. ("AAR" or "Defendant") is an Illinois corporation with its principal place of business in Michigan.

JURISDICTION AND VENUE

4.     IFP's members are citizens of Kansas and, therefore, IFP is a citizen of Kansas.

5.      IFP Ecuador is organized under the laws of Ecuador and has its principal place of business in Ecuador.  IFP Ecuador is a citizen of Ecuador.

6.     AAR is an Illinois corporation with its principal place of business in Michigan and, therefore, is a citizen of Michigan and Illinois.

7.     The parties are of diverse citizenship (Kansas/Ecuador and Michigan/Illinois, respectively).

8.     The amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

9.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

10.     The events that gave rise to the cause of action alleged in this complaint occurred in said District.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

GENERAL ALLEGATIONS

12.     IFP is in the business of overseeing the production and sale of balsa wood products to various industrial manufacturers.

13.     IFP Ecuador is a wholly owned subsidiary of IFP.

14.     IFP Ecuador is in the business of purchasing raw balsa wood and manufacturing balsa wood products in its Ecuador factory.

15.     IFP contracts with various industrial manufacturers for the sale of balsa wood products, including arranging deliveries, handling customs and invoicing customers.

16.     IFP Ecuador manufactures those balsa wood products and sells them to IFP.

17.     IFP sells to AAR flat pieces or "sheets" of balsa, smaller in size than a standard 4' x 8' sheet of plywood. The Original Agreement as defined below expresses the balsa wood product quantities in "trucks" or "truckloads." A pallet of balsa contains 22 sheets. A truck of balsa holds 52 pallets. Thus, a truck of balsa contains 1,144 sheets of balsa (i.e., 22 sheets x 52 pallets). For comparison's sake, a standard overseas shipping container holds 36 pallets or 792 sheets of balsa (i.e., 22 sheets x 36 pallets).

18.     AAR is the business of manufacturing certain supplies for the United States Air Force ("USAF").

19.     AAR uses the balsa sheets supplied by IFP in the manufacture of its supplies for the USAF.

20.     On September 9, 2011, IFP and AAR entered into a Supply Agreement (the "Original Agreement") pursuant to which IFP agreed to supply, and AAR agreed to pay for, certain balsa wood products, a copy of which is attached hereto as **Exhibit A** and incorporated herein by this reference.

21.     The Original Agreement contains a provision that governs the amount of material to be supplied, stating that:

> Material forecast and requirements schedules provided by AAR represent AAR's best estimate of demand for the Material, if any, and are not binding. If AAR has pallet delivery orders from the Air Force, and the returned pallets assets to support production, AAR will schedule a minimum of 5 truckloads per month for the period of 1/1/12 to 5/31/13 and provide IFP the right of first refusal for the first seven trucks per month during the course of this contract. AAR is not obligated to purchase 5 trucks of Balsa per month from IFP if they do not have enough pallets or delivery order funding from the Air Force to support the consumption of 5 trucks of Balsa per month.

> IFP has the capacity to deliver up to 14 trucks per month to AAR based on facilities and equipment, their ability to support this level of production is dependant (sic) upon raw wood availability at the time a ramp-up is necessary. AAR and IFP agree to stay in continuous contact on the need to increase or decrease production levels.

See **Exhibit A**, ¶ 6.0.

22.     The Original Agreement states that:

AAR and Supplier agree to meet annually to review all projects and aspects of this business relationship and meet to review renewal of this Agreement at least *sixty* (60) days before the end of the Term. Supplier's performance, status of relationship, forecast of future demand, and/ or market review will be included in AAR's internal decision. (If applicable) During the renewal review phase, is recognized that competitive offers may be made at prices lower than established in this Agreement. If it is decided by AAR to be a significant offer from a qualified source, Supplier will be given the right of last refusal, and pricing will be implemented within thirty (30) days of written notification. Supplier agrees to apply reasonable effort to meet target pricing.

See **Exhibit A**, ¶ 17.0.

23.     The Original Agreement also states that:

The intent is to establish a course of action that recognizes the need to keep AAR competitive, for Supplier to make a reasonable profit, and the mutual desire to continue this Agreement. Supplier and AAR agree to work together to continually improve this business relationship and re-enforce a mutually beneficial Agreement

See **Exhibit A**, ¶ 17.0.

24.     On or about November 12, 2012, the parties entered into a Supply Agreement Amendment (the "First Amendment"). A copy of the First Amendment is attached hereto as **Exhibit B** and incorporated herein by this reference.

25.     The First Amendment extended the terms of the Original Agreement from May 31, 2013 through August 31, 2016, and also amended the pricing. See **Exhibit B**.

26.     On or about December 5, 2013, the parties entered into a Supply Agreement Amendment (the "Second Amendment"). A copy of the Second Amendment is attached hereto as **Exhibit C** and incorporated herein by this reference.

27.     The Second Amendment extended the terms of the Original Agreement from August 31, 2016 through August 31, 2018, and also amended the pricing terms. See **Exhibit C**.

HB: 4859-1464-7560.4

28.     Finally, the Second Amendment stated the following:

AAR will schedule a minimum of five (5) truck loads per month with IFP during the duration of this contract. IFP will be given the first right of refusal on truck deliveries over five (5) per month and less than eleven (11) per month. AAR is not obligated to purchase five (5) trucks of Balsa per month from IFP if they do not have enough pallets or delivery order funding from the Air Force to support the consumption of five (5) truck of Balsa per month.

See **Exhibit C**.

29.     Per the Original Agreement as modified by the Second Amendment, AAR is required to purchase a minimum of 5 trucks of material from IFP, and IFP has the right of first refusal as to trucks 6-10 as more fully referenced in the preceding paragraph. See **Exhibit C**.

30.     On or about May 9, 2016, the parties entered into a Supply Agreement Amendment (the "Third Amendment"). A copy of the Third Amendment is attached hereto as **Exhibit D** and incorporated herein by this reference.

31.     The Third Amendment extended the terms of the Original Agreement from August 31, 2018 through August 31, 2023, and also amended the pricing. See **Exhibit D**.

32.     On or about May 29, 2019, the parties entered into a Supply Agreement Amendment (the "Fourth Amendment"). A copy of the Fourth Amendment is attached hereto as **Exhibit E** and incorporated herein by this reference.

33.     The Fourth Amendment modified the pricing terms for the period from June 1, 2019 through January 31, 2020 (the Original Agreement as amended by the First Amendment, Second Amendment, Third Amendment and Fourth Amendment shall be collectively referred to as the "Agreement"). See **Exhibit E**.

34.     Specifically, the Fourth Amendment modified the pricing as follows:

o   AAR part number 12001001 increased from $61.87 to $69.14.
o   AAR part number 12001296 = $29.34 decreased from $25.73
o   AAR part number 12000016 = $25.49 decreased from $21.22

HB: 4859-1464-7560.4

See **Exhibit E**.

35.     During 2019, there was a significant increase in global demand for raw balsa wood, which was driven primarily by Chinese companies purchasing raw balsa wood for the manufacture of wind farm components.

36.     As a result of the increased demand, the price of raw balsa wood that IFP Ecuador purchased nearly doubled.

37.     On December 11, 2019, Renee Kroes of AAR ("Kroes") called IFP and advised Mike Kincaid, member of IFP ("Kincaid"), that Lee Krantz, Senior Vice President of AAR ("Krantz"), had heard about the rapid increase in raw balsa prices and wanted to get further information from IFP before AAR submitted any bids to USAF.

38.     On the morning of December 12, 2019, Kincaid, on behalf of IFP, responded that IFP would provide the information requested, and also requested an in-person meeting with Krantz prior to Christmas to discuss the pricing issues. A copy of the December 12, 2019 email exchange is attached hereto as **Exhibit F**.

39.     The same day, AAR responded that Krantz was having a call with the USAF at 12:30 p.m. that day and requested that the information on the balsa market be provided before then. See **Exhibit F**.

40.     Later that day, Kincaid sent AAR a copy of an article explaining the rising balsa prices. See **Exhibit F**.

41.     Additionally, on December 12, 2019, at AAR's request, IFP provided more information on the changing balsa market. See **Exhibit F**.

42.     On December 16, 2019, Kincaid flew to AAR's headquarters in Michigan for the in-person meeting with Krantz and Kroes as requested by Kincaid. The purpose of this meeting was to discuss the pricing issues caused by the rapid change in the raw balsa market.

43.     At the meeting, Krantz advised Kincaid that the USAF had a policy of adjusting prices for commodities and that balsa was considered a commodity. Therefore, AAR could pass on commodity price adjustments in its bid proposal to the USAF, making it possible for AAR and IFP to adjust the pricing mechanism in the Agreement without AAR or IFP incurring losses as a result of IFP Ecuador's increased costs of raw material purchased by IFP Ecuador to fill AAR's orders.

44.     Krantz agreed to enter into price negotiations pursuant to the Agreement, noting that amending the pricing would ultimately depend on the USAF.

45.     On December 19, 2019, Kincaid sent Krantz further explanation of the current balsa market. A copy of the December 19, 2019 email is attached hereto as **Exhibit G**.

46.     In that email, Kincaid explained that balsa wood prices had nearly doubled, and confirmed that Krantz had indicated that there might be "some process AAR / IFP could utilize going forward" with respect to pricing. See **Exhibit G**.

47.     On January 6, 2020, Kincaid wrote Krantz to reiterate that the current market prices for obtaining balsa wood were making it impossible for IFP to make any profit, much less a reasonable one. A copy of the January 6, 2020 email is attached hereto as **Exhibit H**.

48.     Krantz responded that, because AAR had not received approval from the USAF to alter its pricing, AAR was not in a position to agree to a pricing change. See **Exhibit H**.

49.     On January 8, 2020, at AAR's request, Kincaid wrote to AAR to provide an overview of recent history of the IFP-AAR relationship, and the issues with the balsa market. A copy of the January 8, 2020 email is attached hereto as **Exhibit I**.

50.     The January 8, 2020 email was sent in the context of IFP requesting a change in pricing structure from AAR. See **Exhibit I**.

51.      The January 8, 2020 email expressly referenced the Agreement and its amendments. See **Exhibit I**.

52.     On January 15, 2020, AAR wrote to Kincaid to request updated pricing for balsa sheets. A copy of the January 15, 2020 AAR email is attached hereto as **Exhibit J**.

53.     The same day, Kincaid responded to AAR, providing updated pricing and explaining IFP's desire to explore a variable pricing structure. A copy of the January 15, 2020 IFP email is attached hereto as **Exhibit K**.

54.      On January 16, 2020, an internal e-mail from Krantz was forwarded to IFP by AAR stating (in response to Kincaid): "I am afraid this won't do. We need a real looking quote. Qty, size, terms, lead time etc." A copy of the January 16, 2020 email is attached hereto as **Exhibit L**.

55.     That same day, IFP provided to AAR a proposal with two pricing structures: one fixed, one adjustable. A copy of the January 16, 2020 proposal is attached hereto as **Exhibit M**.

56.     On February 28, 2020, AAR wrote to IFP to advise that "[t]here has been several discussions with the contracting officer at the Air Force and they are leaning toward the Adjustable Price Offer. If you are still in agreement, we need to send them a copy of the IFP adjustable quote only with a note that says '2020 pricing not to exceed $145.17." A copy of the February 28, 2020 email is attached hereto as **Exhibit N**.

HB: 4859-1464-7560.4

57.     Later that day, IFP responded to AAR's email, and confirmed a variable pricing structure with a provision that allowed IFP to "walk away with no consequences" in the event of another massive price increase in 2020. A copy of the February 28, 2020 response is attached hereto as **Exhibit O**.

58.     At 12:03 PM, AAR responded that

> I can't tell you how long the negotiation process will continue with AAR and the Air Force; I think we are close. AAR will be on the hook for a five year contract once we sign, the risk is high for us as well. If I am understanding correctly, if we cap at $145.17 you would like a termination clause added. What about adding this to the quote and releases, this would at least give AAR a little time to react: "2020 prices not to exceed $145.17. Due to the volatile balsa market, Termination for Convenience by either party with 90 days written notice will be applicable to this contract".

Copies of the February 28, 2020 email exchanges beginning at 12:03 PM are attached hereto as collective **Exhibit P**.

A copy of the February 28, 2020 12:03 PM response is attached hereto as

59.     At 1:16 PM, IFP responded that:

> Jennifer respectfully if AAR issues a PO and IFP accepts IFP would be the only party to be able to walk because of pricing exceeding the max. IFP can't accept AAR POs schedule our production around that, turn down other sales opportunities only to have AAR cancel for whatever reasons. Of course AAR doesn't have to buy if the price IFP submits is above the max. I'm on the road now but 90 days works good and the trigger is [sic] prices exceeding the max.

See **Exhibit P**.

60.     In reply at 2:01 PM, AAR stated that "We will honor an accepted PO .... '2020 prices not to exceed $145.17. Due to the volatile balsa market, Termination for Convenience [by IFP] with 90 days written notice [to AAR] will be applicable to this contract'. Could you advise how soon we could see a revised adjustable quote with the language?" See **Exhibit P**.

HB: 4859-1464-7560.4

61.     The next day, IFP sent AAR an email with the language proposed by AAR incorporated into the Adjustable Price Offer. A copy of the email exchange beginning February 29, 2020 email is attached hereto as **Exhibit Q**.

62.     On March 2, 2020, AAR responded acknowledging receipt of the Adjustable Price Offer containing the adjustable pricing mechanism. See **Exhibit Q**.

63.     Subsequently, AAR ordered shipments of balsa sheets pursuant to the Agreement as amended with the revised pricing structure.

64.     Beginning in September 2020, AAR ordered less than the required monthly minimum five truckloads of balsa sheets under the Agreement.

65.     Additionally, AAR failed to provide IFP the opportunity to exercise its right to refuse the next five truckloads of balsa sheets (i.e., trucks 6-10) required by AAR pursuant to the Agreement.

66.     Failure to order the required five-truck monthly minimum and failure to provide IFP the opportunity to exercise it first rights of refusal are breaches of the Agreement.

67.     On July 21, 2021, IFP received a communication from AAR indicating that AAR would no longer place orders with IFP because the pricing was "considerably high." A copy of the attempted termination of the Agreement is attached hereto as **Exhibit R**.

68.     AAR did not properly terminate the Agreement and did not have cause to terminate the Agreement.

69.     The Agreement as amended is effective until August 31, 2023.

70.     Plaintiffs' business relationship with AAR constitutes over 90% of Plaintiffs' business.

HB: 4859-1464-7560.4

71.     As a result of AAR's conduct, IFP Ecuador was forced to lay off nearly 90% of its employees, which caused it to incur significant costs in the form of payments to the public unemployment pension system for the Country of Ecuador.

72.     With the reduced capacity at the Ecuador factory, Plaintiffs are unable to fulfill large scale orders for balsa products from other customers.

73.     IFP Ecuador has, and continues to incur, other damages as a result of AAR's conduct.

COUNT I - Breach of Contract
*IFP v. AAR*

74.     IFP incorporates and realleges all preceding paragraphs in this Count I.

75.     The parties entered into a valid contract - the Agreement.

76.     The parties amended the Agreement four times as set forth in **Exhibits B-E**.

77.     As of the Fourth Amendment, the Agreement required AAR to order a minimum of five truckloads of balsa sheets from IFP if AAR had sufficient orders from the USAF, and provide IFP the opportunity to exercise its right to refuse the next five trucks (i.e., trucks 6-10).

78.     The parties negotiated a fifth amendment to the Agreement to enact the adjustable pricing mechanism on February 29, 2020 as reflected in **Exhibits F-Q**.

79.     AAR placed orders for balsa sheets with IFP pursuant to the Agreement as amended by **Exhibits F-Q**.

80.     AAR had sufficient orders from the USAF for it to meet the minimum order requirement of 5 truckloads of balsa sheets per month under the Agreement.

81.     Furthermore, AAR had orders from the USAF that, from time to time, would require more than 5 truckloads per month.

82.     IFP delivered balsa sheets to AAR pursuant to the Agreement.

HB: 4859-1464-7560.4

83.     While AAR submitted certain orders of balsa sheets to IFP which orders were fulfilled by IFP, AAR failed to order the minimum of 5 truckloads of balsa per month pursuant to the Agreement.

84.     From September 2020 to December 2021, AAR ordered from IFP forty truckloads less than the minimum truckloads required by the Agreement.

85.     From January 2022 to August 2023, AAR is obligated to purchase, at minimum, an additional eighty truckloads (16 months x 5 trucks) under the Agreement.

86.     AAR breached the Agreement by ordering less than the required minimum five trucks under the Agreement and failing to provide IFP the opportunity to exercise its right to refuse the next five trucks (i.e., trucks 6-10) required by AAR as required by the Agreement.

87.     AAR further breached the Agreement by improperly attempting to terminate the Agreement.

88.     As a result of AAR's breaches of the Agreement, IFP has been damaged in an amount of not less than $3,465,700. Additional damages continue to accrue.

WHEREFORE, Plaintiff International Forest Products, L.L.C. prays that this Court enter a judgment in its favor and against Defendant AAR Manufacturing, Inc. in the amount due under the Agreement, the exact amount to be proven at or before trial, plus pre- and post-judgment interest, together with such other and further relief as shall be just and equitable.

<u>COUNT II – Tortious Interference with a Business Expectancy</u>
*IFP Ecuador v. AAR*

89.     IFP Ecuador incorporates and realleges all preceding paragraphs in this Count II.

90.     IFP Ecuador had a business expectancy in the performance under the Agreement by AAR.

HB: 4859-1464-7560.4

91.     Throughout the relationship between the parties, AAR was aware of the existence of IFP Ecuador and the business expectancy by IFP Ecuador.

92.     IFP Ecuador was reasonably certain that the business expectancy would have been continued at least until 2023.

93.     AAR wrongfully breached the Agreement with IFP.

94.     As a result of AAR's misconduct, IFP Ecuador has suffered damages including but not limited to lost profits in the amount of $346,632, layoff costs in the amount of approximately $300,000, lost capacity to fulfill future contracts, as there is a significant ramping up period before production can be maintained and reduced future capacity to generate business.

95.     IFP Ecuador has been damaged by AAR's conduct in an amount not less than $646,632. Damages continue to accrue.

WHEREFORE, Plaintiff International Forest Products del Ecuador SA prays that this Court enter a judgment in its favor and against Defendant AAR Manufacturing, Inc. in an amount to be proven at or before trial, plus pre- and post-judgment interest, together with such other and further relief as shall be just and equitable.

Dated:  January 3, 2022                          Respectfully Submitted,

                                                 HUSCH BLACKWELL LLP

                                                 By:   s/ Christopher C. Miles
                                                 John Cruciani  KS #16883
                                                 Christopher C. Miles  KS #25562
                                                 4801 Main Street, Suite 1000
                                                 Kansas City, MO 64112
                                                 Tel: (816) 983-8000
                                                 Fax : (816) 983-8080
                                                 john.cruciani@huschblackwell.com
                                                 christopher.miles@huschblackwell.com

                                                 *Attorneys for International Forest Products, L.L.C.*
                                                 *and International Forest Products del Ecuador SA*

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A | Supply Agreement dated September 9, 2011 ("Original Agreement") |
| B | Supply Agreement Amendment dated November 12, 2012 ("First Amendment") |
| C | Supply Agreement Amendment dated December 5, 2013 ("Second Amendment") |
| D | Supply Agreement Amendment dated May 9, 2016 ("Third Amendment") |
| E | Supply Agreement Amendment dated May 29, 2019 ("Fourth Amendment") |
| F | Email Exchange dated December 12, 2019 |
| G | Email from Kincaid to Krantz dated December 19, 2019 |
| H | Email from Kincaid to Krantz dated January 6, 2020 |
| I | Email from Kincaid to AAR dated January 8, 2020 |
| J | Email from AAR to Kincaid dated January 15, 2020 |
| K | Email from Kincaid to AAR dated January 15, 2020 |
| L | Internal Email dated from Krantz forwarded to IFP by AAR dated January 16, 2020 |
| M | Proposal from IFP to AAR dated January 16, 2020 |
| N | Email from AAR to IFP dated February 28, 2020 |
| O | Email from IFP to AAR dated February 28, 2020 |
| P | Email exchange dated February 28, 2020 |
| Q | Email from IFP to AAR dated February 29, 2020 and Email from AAR to IFP dated March 2, 2020 |
| R | Email from AAR to IFP dated July 21, 2021 |

HB: 4859-1464-7560.4