IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

INTERNATIONAL FOREST PRODUCTS,
L.L.C. & INTERNATIONAL FOREST
PRODUCTS DEL ECUADOR SA,

    *Plaintiffs,*

vs.

    Case No. 22-02002-EFM

AAR MANUFACTURING, INC.,

    *Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff International Forest Products Del Ecuador SA ("IFP Ecuador") provides balsa wood to its parent company Plaintiff International Forest Products, L.L.C. ("IFP"). IFP then sells the balsa wood products to Defendant AAR Manufacturing, Inc. ("AAR") in accordance with a contract. In 2019, the price to source balsa wood from Ecuador increased rapidly; in response, IFP and AAR agreed to a new pricing agreement in 2020. In 2021, AAR declined to purchase any more balsa wood from IFP. IFP asserts that AAR terminated the contract early and therefore breached. IFP Ecuador, who does not have a contract with AAR, asserts that the early termination amounts to tortious interference of the relationship between IFP and IFP Ecuador.

This matter comes before the Court on AAR's motion to dismiss for failure to state a claim. First, AAR contends that the agreement in 2020 with IFP was not an amendment to the contract

and so the contract could not be breached as IFP claims.  Second, AAR contends that IFP Ecuador cannot duplicate IFP's breach of contract claim, and that even if it could, IFP Ecuador has not adequately pleaded malice.  For the reasons discussed below, the Court grants in part and denies in part AAR's motion.

## I. Factual and Procedural Background[1]

IFP is organized under the laws of Kansas and its members are citizens of Kansas. IFP sources balsa wood from its subsidiary, IFP Ecuador, who is organized under the laws of Ecuador and is a citizen of Ecuador.  Defendant AAR, an Illinois corporation with its principal place of business in Michigan, purchases refined balsa wood from IFP and sells that balsa wood to the United States Air Force ("USAF").  IFP and AAR entered into their initial contract ("Original Contract") in 2011.  The contract, in addition to various other requirements, provided that AAR purchase balsa wood products from IFP at a set price if the USAF required it.  The set price was to be re-negotiated according to a formula each year and any lawsuits would be resolved under Illinois law.  The Original Contract had a term of agreement ending in 2013.

Between 2011 and this action, there were four undisputed amendments and a disputed fifth amendment.  The first amendment extended the agreement to 2016 and adjusted the pricing.  The second extended the agreement to 2018, adjusted the pricing, reiterated that AAR was required to order five truckloads of balsa wood per month if the USAF requested that many from it, and added that IFP had the right of first refusal for truckloads six through ten.  The third extended the agreement to 2023 and adjusted the pricing.  The fourth adjusted the pricing between June 2019, and February 2020, but then called for a return to the previous pricing methodology.

---

[1] The facts are taken from Plaintiffs' joint Complaint and are viewed in the light most favorable to them.

Leading up to the disputed fifth amendment, there was a significant surge in global demand for raw balsa wood which increased the procurement costs for IFP Ecuador in 2019. AAR and IFP began conversations about the price increase in December of that year. Mr. Kincaid of IFP explained that prices were likely rising because of Chinese wind turbine production which requires balsa wood. He also disclosed the strain that the rapid increase in procurement costs, combined with the fixed sale price to AAR, was putting on IFP. In the following months, AAR discussed the price increase with the USAF who was amenable to paying more to AAR for balsa wood products. AAR then agreed to pay an increased price to IFP, which was memorialized in the Adjustable Price Offer ("APO"). The APO is the disputed fifth amendment.

Between the receipt of the APO and September 2020, AAR ordered at least five truckloads of balsa wood each month and paid the amount agreed to in the APO. In September, however, AAR began to order less than five truckloads or did not give IFP the right of first refusal for truckloads six through ten. In July of the next year, AAR told IFP it would no longer place orders with IFP because the pricing was "considerably high."

IFP filed suit for breach of contract due to AAR's early termination and AAR's failure to perform. IFP seeks damages for the months where AAR did not order the minimum five truckloads, where AAR did not give IFP the right of first refusal, and for the profit expected between the early termination and the end of the agreement in 2023.

IFP Ecuador filed suit for tortious interference with a business expectancy claiming the early termination by AAR was intentional misconduct that interfered with the business relationship between IFP Ecuador and IFP. IFP Ecuador seeks damages for lost profits and layoff costs. AAR moves to dismiss each claim per Rule 12(b)(6).

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss any claim where the plaintiff has failed to state a claim for which relief can be granted.[2] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[3] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[5] Generally, the Court is constrained by the allegations in the complaint when considering a motion to dismiss.[6] However, "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."[7] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint but need not afford such a presumption to legal conclusions.[8]

## III.    Analysis

The breach of contract claim by IFP and the tortious interference claim by IFP Ecuador both arise from the same action by AAR, namely the decision in mid-2021 to stop purchasing balsa

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).

[7] *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) (citations omitted).

[8] *Iqbal*, 556 U.S. at 678.

wood from IFP.  For the reasons explained further below, the Court concludes that IFP has stated a facially plausible claim for breach of contract, but IFP Ecuador has failed to state a claim for tortious interference with a business expectancy.

**A.      IFP has stated a facially plausible claim for breach of contract.**

Under Illinois law,[9] a plaintiff must plead four elements in a breach of contract claim: "(1) a contract with definite and certain terms existed between the parties; (2) the plaintiff performed its obligations under the contract; (3) the defendant breached its obligations under the contract; and (4) the plaintiff suffered damages as a result."[10]  Neither party disputes that the Original Contract was a valid contract, nor does either party dispute that the first four amendments were valid amendments.  The disagreement here is whether the Adjustable Price Offer is an amendment. This Court, therefore, begins by determining whether IFP has pleaded facts that—when making all reasonable inferences in its favor—would support the conclusion that the APO is an amendment.

*1.      A contract with definite and certain terms existed between the parties.*

As noted above, both parties agree that the Original Contract and Amendments #1-#4 were valid.  The parties also do not dispute that, pursuant to the Original Contract, a valid amendment must: (1) reference the Original Contract; (2) be reduced to writing in a separate agreement; and (3) be executed by authorized representatives from both parties.  For the APO to be a valid amendment, these requirements must plausibly be met.

---

[9] The parties agree that the Court should apply Illinois law to IFP's breach of contract claim against AAR.

[10] *Hoopla Sports & Ent., Inc. v. Nike, Inc.*, 947 F. Supp. 347, 356 (N.D. Ill. 1996) (citation omitted).

As a preliminary matter, IFP states that all the emails in its attached Exhibits F-Q constitute, together, a fifth amendment. However, "[w]here parties made the reduction of the agreement to writing, and its signature by them, a condition precedent to its completion, it will not be a contract until that is done."[11] Because the parties here mandated reduction to writing and signatures by them as conditions precedent to amendment formation, the emails would not satisfy the amendment requirement of the Original Contract. Thus, the APO alone must be considered the potential amendment.

The first requirement for a valid amendment mandates that any amendment reference the Original Contract. Defendant argues that the APO does not refer to the Original Contract and that because the Original Contract and subsequent amendments contain integration clauses, the APO could not be an amendment. Integration clauses signify full integration and explicitly manifest the intention of the parties to be bound by the text of the document and not by any prior agreements to protect both parties from misinterpretation.[12] If a document is not fully integrated, it is partially integrated which allows terms from prior discussions or negotiations that supplement—but do not contradict—the text of the document to be added.[13]

First, the APO is a contract for the sale of goods and therefore is governed by the UCC.[14] Further, the APO does not contain an integration clause. In Illinois, when courts interpret contracts governed by the UCC, they are permitted to look beyond a contract to determine whether there is

---

[11] *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990) (quoting *Balt. & Ohio Sw. R.R. Co. v. People ex rel. Allen*, 63 N.E. 262, 263 (Ill. 1902)).

[12] *See Air Safety, Inc. v. Tchrs. Realty Corp.*, 706 N.E.2d 882, 885 (Ill. 1999).

[13] *See J&B Steel Contractors v. C. Iber & Sons*, 642 N.E.2d 1215, 1219-20 (Ill. 1994).

[14] 810 ILL. COMP. STAT. 5/2-105(1) (defining "goods" as "all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action.").

full or partial integration.[15] Thus, this Court can look to the exhibits attached to the Complaint to evaluate whether the APO was intended to be fully integrated. In reviewing IFP's accompanying e-mails, they do not conclusively establish that the APO was to be fully integrated. This finding, together with the lack of an integration clause, allows for the reasonable inference that the APO was only partially integrated. IFP has also pleaded there are terms in Exhibits H and I which reference the Original Contract that would not contradict the APO.[16] Thus, by supplementing the APO with Exhibits H and I, this Court finds it plausible that the APO was intended to reference the Original Contract.

The second and third requirements to amend the Original Contract direct that any amendment be a separate agreement in writing and executed by authorized representatives. Regarding the second requirement, IFP has alleged in its Complaint that there was a fifth amendment and attached the APO. This Court finds it plausible that the APO is a separate agreement in writing.

As to the third requirement, IFP has pleaded an authorized representative—Mrs. Frazier—acted on behalf of Defendant, and that her acknowledgment over e-mail was satisfactory to meet the execution requirement to amend the contract. Defendant does not challenge that an e-mail with a signature block can be satisfactory to consent to a contract,[17] but contends that Mrs. Frazier is

---

[15] *See Geneva Int'l Corp. v. Petrof, Spol, S.R.O.*, 608 F. Supp. 2d 993 (N.D. Ill. 2009) (declaring that the Supreme Court of Illinois has often used the Restatement approach to explain meaning of even fully integrated documents: "Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish . . . the meaning of the writing, whether or not integrated.") (quoting RESTATEMENT (SECOND) OF CONTRACTS § 214(c)); *see also* 810 ILL. COMP. STAT. 5/2-202(b).

[16] In relevant part, the Complaint references a response from Mr. Krantz in Exhibit H that references altering the pricing. This Court notes, however, that an e-mail with a response from Mr. Krantz is not in Exhibit H as suggested. In any event, Exhibit I does contain an e-mail from Mr. Kincaid that references the Original Contract, previous amendments, and price relief.

[17] *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 296 (7th Cir. 2002) (stating "The Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001, provides that in all transactions in or affecting interstate or

not an authorized representative of AAR. At this point in the proceedings, IFP need not prove that Mrs. Frazier is an authorized representative of AAR. Thus, IFP has met its burden as to the third requirement.

As the Original Contract in this case is governed by the UCC, this Court finds IFP pleaded with reasonable plausibility that the APO meets all requirements to be an amendment. Therefore, it is plausible that the APO was a fifth amendment of the Contract. For the remainder of this Court's analysis, it will be assumed that the APO amended the contract.

*2.     IFP performed its obligations under the amended contract.*

The second element of a breach of contract claim that must be pleaded is that the plaintiff performed its obligations under the contract. Defendant contends that the pleading by IFP here is inadequate, citing *Solvay USA v. Cutting Edge Fabrication, Inc.*,[18] but this Court does not find that case applicable. There, a breach of contract claim was so barebones that the court considered it a legal conclusion and dismissed the claim.[19] Specifically, the complaint in *Solvay* stated, "Plaintiff has complied with all requirements under the Contract."[20] IFP here has not only pleaded it delivered balsa sheets—the primary requirement of the contract—but it has also attached the referenced contract to its Complaint.

This Court likewise finds *Tatten v. Bank of Am. Corp.*[21] distinguishable. There, the plaintiff made specific allegations that he could not pay according to the contract, negotiated an amendment

---

foreign commerce . . . a contract or other record relating to the transaction shall not be denied legal effect merely because it is in electronic form.").

[18] 521 F. Supp. 3d 718 (N.D. Ill. 2021).

[19] *Id.* at 724.

[20] Complaint at 3, Solvay USA v. Cutting Edge Fabrication, Inc., 521 F. Supp. 3d 718 (N.D. Ill. 2021) (No. 20 Civ. 849).

[21] 562 F. App'x 718 (10th Cir. 2014).

to the contract, and then still did not pay.[22] Subsequently the case was dismissed for the plaintiff's failure to allege substantial performance.[23] Here, IFP alleges that after a rapid increase in the price of balsa wood, the parties amended their contract. Thereafter, IFP delivered balsa wood pursuant to that amended contract. The Court therefore does not find *Tatten* relevant.

IFP has provided more than a "formulaic recitation of the elements of a cause of action,"[24] and has adequately pleaded facts that allege substantial performance under the contract as amended by the APO.

   3.     *Defendant breached its obligations under the amended contract.*

IFP has sufficiently pleaded facts that allow for the reasonable inference that Defendant breached the contract by: (1) not purchasing the minimum number of trucks; and (2) terminating the contract prematurely.

First, Defendant—if the USAF needed balsa wood—was contractually obligated to order the first five truckloads of balsa wood from IFP and provide IFP the right of first refusal for the next five truckloads. IFP pleaded that the USAF required balsa wood from Defendant, but that Defendant did not order that amount from IFP. Therefore, IFP adequately pleaded Defendant breached its obligation under the contract.

Second, Defendant could only terminate the contract with cause and with a 120-day written notification. Absent any specific provisions in the contract as to what proper "cause" to terminate would be, and because, in Illinois, the contract must be "construed as a whole, by viewing each

---

[22] *Id.* at 721.

[23] *Id.*

[24] *Twombly*, 550 U.S. at 555; *see also 20/20 Foresight, Inc. v. George*, 2021 WL 2823095 *4 (N.D. Ill. 2021).

component in light of the others,"[25] this Court assumes "cause" to mean material breach of terms in the contract. The undisputed Exhibit R contains an e-mail wherein Mrs. Kroes of AAR tells IFP they will not issue any new purchase orders because the "last price is still considerably high."

Viewing this e-mail in the light most favorable to IFP, this Court does not find material breach on the part of IFP as the reason for Defendant's termination of the contract. And regardless of whether this was a proper cause for Defendant to terminate, it would appear Defendant did not provide the required 120-day written notification. IFP therefore has sufficiently pleaded facts that could establish Defendant breached the contract in mid-2021. IFP has also sufficiently pled damages by pleading that the contract continued until mid-2023 and that it lost profit due to the early termination.

Having found that the APO amended the Original Contract and that IFP performed in accordance with that amended contract, this Court also finds that IFP has sufficiently pleaded Defendant's breach and damages resulting therefrom. Therefore, the motion to dismiss the breach of contract claim for failure to state a claim is denied.

**B.      IFP Ecuador has not stated a facially plausible claim for tortious interference with a business expectancy.**

Defendant moves to dismiss IFP Ecuador's claim of tortious interference with a business expectancy arguing IFP Ecuador has failed to state a claim. To state a claim for tortious interference with a business expectancy under Kansas law,[26] a plaintiff must show:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or

---

[25] *Selch v. Columbia Mgmt.*, 977 N.E.2d 287, 294 (Ill. App. Ct. 2012) (citing *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)).

[26] The parties agree that the Court should apply Kansas law to IFP Ecuador's tort claim against AAR.

expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by the defendant; and (5) damages suffered by plaintiff as a direct or proximate result of defendant's misconduct.[27]

Intentional misconduct is predicated on improper or malicious conduct by the defendant.[28] Malice is "intentional interference without justification,"[29] and "the presence or absence of malice are typically questions for the jury."[30] This tort is actionable where a party improperly interferes with a prospective business advantage of a third person.[31]

The basis for IFP Ecuador's asserted interference is that Defendant terminated a contract with IFP, IFP Ecuador's parent company, which caused IFP to no longer use IFP Ecuador's services and resulted in damages. IFP Ecuador has not alleged any actions by Defendant that interfered with IFP Ecuador's business expectancy but for Defendant's wrongful breach of the contract with IFP. IFP Ecuador argues it has pleaded malice because it has pleaded intentional misconduct which requires malice.

Defendant argues that this tort claim cannot be brought because it is preempted by the contract claim. Defendant is incorrect; in Kansas, tortious interference with prospective business advantage claims are not preempted by breach of contract claims.[32] However, IFP Ecuador must

---

[27] *Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp. 2d 1146, 1154 (D. Kan. 2006) (citing *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 77 P.3d 130, 151 (2003)).

[28] *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106, 1115 (1986).

[29] *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 663 F. Supp. 1360, 1492 (D. Kan. 1987) (citing RESTATEMENT (SECOND) OF TORTS § 766 cmt. s (1979)), *aff'd*, 899 F.2d 951 (10th Cir. 1990).

[30] *Burcham*, 77 P.3d at 152.

[31] *Noller v. General Motors Corp.*, 244 Kan. 612, 772 P.2d 271, 276 (1989).

[32] *See Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1161 (D. Kan. 1990).

plead that Defendant (1) acted intentionally, having "desired the alleged interference or known that it was substantially certain to occur"; and (2) acted maliciously or improperly.[33]

The Complaint does not adequately plead Defendant's intent in breaching the contract. The allegation that Defendant wrongfully breached the contract with IFP does not imbue any motivation, much less a malicious motivation toward IFP Ecuador. Therefore, even when viewing the Complaint in its most favorable light, this Court cannot find that IFP Ecuador has adequately stated a claim. Thus, Defendant's motion to dismiss IFP Ecuador's claim for tortious interference is granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 11) is **GRANTED IN PART and DENIED IN PART.**

**IT IS SO ORDERED.**

Dated this 3rd day of August, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[33] *Fifth Third Bank v. Brooke Holdings, Inc.*, 2011 WL 1337093 *7 (D. Kan. 2011); *see also Pizza*, 737 F. Supp. at 1154.